## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

JAMAR THOMAS,

             Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

             Defendant.

**MEMORANDUM OF LAW
AND ORDER**
Civil File No. 22-02730 (MJD/JFD)

Jamar Thomas, <u>pro se</u>.

Adam J. Hoskins, DOJ, USAO, Counsel for Defendant.

## I.      INTRODUCTION

This matter is before the Court on the Social Security Administration's

("SSA") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P.

12(b)(6) (Doc. 7) and Jamar Thomas's Motion to/for Opposition to Defendant's

Motions to Dismiss (Doc. 17).

## II.     BACKGROUND

### A.      Factual Background

Thomas is a 32-year-old resident of Minneapolis, Minnesota who moved to

Minnesota from Maine as a young adult.  (Def. Exs. B, G at 2; Compl. ¶ 1.)  He

has never had a Social Security Number ("SSN").  (Compl. ¶ 7-3.)

On August 9, 2022, Thomas applied for an original SSN at the Social

Security Administration ("SSA") office in Minneapolis ("SSA office").  (Compl. ¶

7-1.)  He submitted eight documents to SSA:

- A completed SS-5, Application for Social Security Card;
- A photocopied "State of Maine Delayed Birth Registration" issued in June 2011, stamped and signed twice by a Minnesota notary;
- A photocopied November 1998 Grand Rapids, Michigan hospital "ED Discharge Instruction Summary"
- A photocopied document on the letterhead of the Children's Clinic in Portland, Maine dated January 1991;
- A photocopied "Homeschool Transcript" dated August 2003;
- A "Statement of Claimant or Other Person" form;
- A letter in support of his application; and
- A Minnesota driver's license with an August 28, 2022 expiration date.

(Doc. 8 at 3-4; Doc. 18 at 4; Phoenix Decl. ¶¶ 7-14.)

On August 23, 2022, SSA sent a letter stating that Thomas had not

provided acceptable proof of age and that photocopies were not acceptable.

(Def. Ex. J.)  This letter also included a "12+ Checklist—U.S. Citizens" with

twelve boxes checked showing documents Thomas could provide as proof of age

and proof that he did not already have an SSN if he chose to reapply.  (Id. at 3;

Def. Ex. K.)  The Checklist gave Thomas until September 30, 2022 to provide the

documents.  (Def. Ex. K.)  The letter had a section titled "If You Disagree" that

told Thomas what to do if he thought he should get an SSN based on what he

had given SSA.  (Def. Ex. J at 3.)  The letter said, "[Y]ou can ask us to review your

2

case.  Someone who did not look at your first application will review it.  To ask for a review, please call, write, or visit the Social Security office."  (Id.)

On October 3, 2022, SSA sent Thomas a letter noting that it had not received his documents by September 30 and stating, "Please apply again."  (Def. Ex. L.)  The letter included the same "If You Disagree" language as the August 23 letter.  (Id.)  On October 19, 2022, SSA returned Thomas's application and documents.  (Def. Ex. M at 2-3.)  Included was a checklist of documents missing from the application that also now said, "You have not given us the document(s) we need to show **IDENTITY** or the identification you provided is not acceptable . . . . (Valid state . . . driver's license, . . . .)."  (Id. at 2 (emphasis in original).)

At some unknown date after Thomas was told he must supply new documents, he went to the SSA office and Virginia Phoenix, District Manager of the office ("Phoenix") said that further communications needed to go through "Akolade Gbadamosi."  (Compl. at 4.)  Thomas knew that Gbadamosi worked for Congresswoman Ilhan Omar because Thomas had emailed Gbadamosi about being denied an SSN.  (Id.)   Additional facts will be discussed as necessary.

**B.      Procedural History**

3

On October 27, 2022, Thomas filed this pro se lawsuit.  The Complaint asserts violations of the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment.  (Compl. ¶ 7-3.)  Thomas wants SSA to issue him an SSN.  (Id.)  SSA filed the instant Motion to Dismiss in lieu of filing an answer.  (Doc. 7.)  In addition to addressing Thomas's claims, SSA also addresses whether the Court should construe Thomas's APA claim as a mandamus action.  (Doc. 8 at 11.)  Thomas responded by filing a "Motion to/for Opposition to Defendants' Motions to Dismiss."  (Doc. 17.)

## C.    Statutory and Regulatory Background—The Social Security Act

Social Security numbers have become personal identifiers.  The Commissioner must "take affirmative measures to assure . . . [SSNs] will, to the maximum extent practicable, be assigned to all members of appropriate groups or categories of individuals."  42 U.S.C. § 405(c)(2)(B)(i).  SSA requires "such evidence as may be necessary to establish the age, citizenship . . . and true identity of" applicants for SSNs.  Id. § 405(c)(2)(B)(ii).  SSA has requirements for documentary evidence, see 20 C.F.R. § 422.107, and instructions for processing SSN applications, see the Program Operations Manual System ("POMS").  "SSA will only  assign an SSN if it determines an applicant meets all evidence requirements. . . .  All . . . documents submitted as evidence must be originals or

4

copies of the original documents certified by the custodians of the original

records and are subject to verification."  20 C.F.R. § 422.107(a).

## III.   DISCUSSION

### A.   Standard of Review for Motions to Dismiss

SSA has filed motions to dismiss under both Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6).  Under Rule 12(b)(6), a party may move the

Court to dismiss a claim if, on the pleadings, a party has failed to state a claim

upon which relief may be granted.  In reviewing a motion to dismiss, the Court

takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d 842,

848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is
> plausible on its face. Thus, although a complaint need not include
> detailed factual allegations, a plaintiff's obligation to provide the
> grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers the complaint and

"materials that are part of the public record or do not contradict the complaint, as

well as materials that are necessarily embraced by the pleadings.  For example,

courts may consider matters of public record, orders, items appearing in the

record of the case, and exhibits attached to the complaint." Greenman v. Jessen,

787 F.3d 882, 887 (8th Cir. 2015) (citations omitted).

Thomas's pro se filings must be liberally construed. Earl v. Fabian, 556

F.3d 717, 723 (8th Cir. 2009) (citation omitted). Still, he must "plead sufficient

facts to state a claim that is plausible on its face." Petrovich v. City of Duluth,

No. CV 20-2272 (MJD/LIB), 2021 WL 4805179, at *1 (D. Minn. Oct. 14, 2021).

A party may also move to dismiss for lack of subject matter jurisdiction.

Fed. R. Civ. P. 12(b)(1). "The existence of subject matter jurisdiction in federal

court is a question of law subject to de novo review." Keene Corp. v. Cass, 908

F.2d 293, 296 (8th Cir. 1990). The Court must first determine whether the motion

is a "facial attack" or a "factual attack" on the Court's jurisdiction. Branson

Label, Inc. v. City of Branson, 793 F.3d 910, 914 (8th Cir. 2015).

> In a facial attack, the court merely [determines] if plaintiff has
> sufficiently alleged a basis of subject matter jurisdiction.
> Accordingly, the court restricts itself to the face of the pleadings and
> the non-moving party receives the same protections as it would
> defending against a motion brought under Rule 12(b)(6).
> Conversely, in a factual attack, the existence of subject matter
> jurisdiction [is challenged] in fact, irrespective of the pleadings, and
> matters outside the pleadings, such as testimony and affidavits, are
> considered. Thus, the nonmoving party would not enjoy the benefit
> of the allegations in its pleadings being accepted as true . . . .

Id. (internal citations omitted).

**B.     SSA's Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)**

SSA does not indicate whether it brings a facial or factual attack on the pleadings.  However, because Thomas is <u>pro se</u>, the Court is required to construe his filings liberally.  <u>See</u> <u>Earl</u>, 556 F.3d at 723.  Accordingly, the Court finds that all Thomas's exhibits are related to the Complaint and will consider them.

Complaint Exhibits A, B, and C each contain excerpts from multiple documents and/or recordings on flash drives.  Thomas marked the exhibits A1, A2, etc., but each exhibit was docketed only as A, B, or C.  The Court cites the exhibits as "Compl. Ex. A, B, or C," along with their ECF page numbers.  Thomas also submitted exhibits with his Reply Memorandum that will be cited by ECF number.  SSA submitted exhibits with its motion that the Court will consider because they comply with the rules.  <u>See</u> <u>Greenman</u>, 787 F.3d at 887.

**1.     Jurisdiction under the Social Security Act**

Thomas argues that the Social Security Act's judicial review provision, 42 U.S.C. § 405(g), which provides for judicial review only after a final decision of the Commissioner of Social Security, is inapplicable to his case. (Doc. 18 at 10-11(citing D. Minn. LR 7.2 (governing actions under 42 U.S.C. § 405(g)).)

The Social Security Act provides prerequisites to judicial review, which the Supreme Court has confirmed as controlling the justiciability of individual claims. Specifically, 42 U.S.C. § 405(g) states that judicial review is available only "after any final decision of the Commissioner of Social Security made after a hearing to which [the plaintiff] was a party." See Califano v. Sanders, 430 U.S. 99, 108 (1977) (same—addressing decisions on denials of disability benefits).

20 C.F.R. § 404.902 lists twenty-three actions that SSA considers initial determinations that may become appealable final determinations. Denial of an SSN is not one of the actions on the list. Instead, SSA provides procedures for appealing a denial of issuance of an SSN. See Vondran v. Berryhill, No. 16-cv-9013, 2017 WL 1862645, at *5 (N.D. Ill. May 9, 2017) (describing process); (Def. Exs. I, M (notice of processes provided to Thomas).)

Thomas filed suit after the denial of his first and only application for an SSN. (Compl. at 4.) Thomas did not appeal SSA's decision or receive any final decision from SSA so as to exhaust his potential administrative remedies. (Id.) Thomas is still free to reapply for an SSN or to appeal the initial decision. Therefore, the determination that SSA issued to Thomas was not a final determination and is not justiciable under the Social Security Act. See Rosales-

8

Rodriguez v. Berryhill, 751 F. App'x 569, 570 (5th Cir. 2019) (finding no agency

action when SSA refused to process SSN application of applicant who submitted

improper documentation and did not return with appropriate documents).

      Accordingly, the Court has no jurisdiction under the Social Security Act

to hear Thomas's claims because (1) § 405(g) does not address applications for

SSNs and (2) no decision has been made on his application.  See Rosales-

Rodriguez, 751 F. App'x at 570.

### 2.    Jurisdiction under 28 U.S.C. § 1331

Thomas briefly implies that the Court has § 1331 federal question

jurisdiction over his action.  The Social Security Act provides the following:

> No findings of fact or decision of the Commissioner of Social
> Security shall be reviewed by any person, tribunal, or governmental
> agency except as herein provided.  No action against the United
> States, the Commissioner of Social Security, or any officer or
> employee thereof shall be brought under section 1331 or 1346 or
> Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).

As discussed, the Social Security Act does not provide for judicial review

of Thomas's claims.  And as clearly stated above, § 1331 does not give the Court

jurisdiction to review Thomas's claims.

### 3.      Jurisdiction under the Administrative Procedures Act

Thomas asserts SSA acted in an arbitrary and capricious manner when it said his documents were not satisfactory and therefore the SSA violated the APA.  (Doc. 18 at 9-10.)  Thomas claims the SSA was dishonest in the documentation it provided him.  For example, Thomas states that although he gave SSA his driver's license, SSA claimed "no ID was presented" in its notice to him.  (<u>Id.</u> at 9 (citing Def. Ex. M (Oct. 19, 2022 letter from SSA).)

The APA "does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of [every] agency action," and the Social Security Act outlines what actions are justiciable.  <u>See Califano</u>, 430 U.S. at 107 & n.7; 42 U.S.C. § 405(g)-(h).  Absent an implied grant of jurisdiction in the APA, jurisdiction must be conferred under another statute, generally 28 U.S.C. § 1331. <u>See Califano</u>, 430 U.S. at 106-07.  As previously discussed, § 1331 does not confer jurisdiction.

Because Thomas did not attempt to comply with SSA's instructions, SSA never initiated a review of his application that could lead to final agency action and invoke federal jurisdiction.  This case is analogous to <u>Rosales-Rodriguez</u> in which there was no agency action when SSA employees refused to process an SSN application when the applicant not only failed to bring in appropriate

documentation but also never returned with appropriate documents.  751 F.

App'x at 570.  The only difference here is that SSA did not immediately review

Thomas's documents.

Thomas's action "arises" under the Social Security Act because Thomas's

standing and substantive issues are based in the Act.  42 U.S.C. § 405(c)(2)(B)(i);

Heckler v. Ringer, 466 U.S. 602, 615 (1984).  Thomas did not exhaust his

administrative remedies: he did not reapply or appeal and therefore, SSA did not

have the opportunity to "act" in his case.  Accordingly, SSA's action in this case

was not arbitrary and capricious.

Thomas also alleges that SSA acted arbitrarily and capriciously when it

stated Thomas failed to verify his identification in October 2022 after SSA had

verified it onsite on August 9, 2022.  (Def. Ex. H (photocopy showing driver's

license verified by SSA employee).)  This is simple: while SSA's August 23 letter

did not state that Thomas failed to provide documentation to show identity, by

the time SSA returned Thomas's application and documents on October 19,

Thomas's driver's license had expired and was no longer a valid ID.  (Def. Exs. H

at 2 (photocopy of driver's license with Aug. 28, 2022 expiration date), M; K (12+

Checklist (citing https://www.ssa.gov/ssnumber/ss5doc.htm ("[a]n acceptable

document must be current (not expired)" (emphasis added)).)  Thus, SSA did not

act arbitrarily and capriciously.  The Court has no jurisdiction under the APA.

### 4.    Mandamus Jurisdiction

SSA argues that the Court can also evaluate this issue under mandamus

jurisdiction because the dismissal of a petition for a writ of mandamus is

appropriate under Rule 12(b)(1) when a plaintiff "cannot establish that there is a

clear, non-discretionary duty of the Commissioner" to take the action he seeks.

See Mitchael v. Colvin, 809 F.3d 1050, 1054 (8th Cir. 2016).

Courts evaluate challenges to SSA's decisions to withhold SSNs under

mandamus jurisdiction.  See, e.g., Vondran, 2017 WL 1862645, at *2 ("Mandamus

jurisdiction, 28 U.S.C. § 1361, is proper for claims under the Social Security Act

that are procedural in nature.") (citation omitted).  28 U.S.C. § 1361 provides that

"district court[s] shall have original jurisdiction of any action in the nature of

mandamus to compel an officer or employee of the United States or any agency

thereof to perform a duty owed to the plaintiff."  A writ of mandamus "is

intended to provide a remedy for a plaintiff only if he has exhausted all other

avenues of relief and only if the defendant owes him a clear nondiscretionary

duty."  Heckler, 466 U.S. at 616.  "[I]n order for mandamus to lie[,] the duty

owed to the plaintiff must be ministerial and a positive command so plainly

12

prescribed as to be free from doubt." Mitchael, 809 F.3d at 1054 (cleaned up). The Court will evaluate Thomas's challenge to SSA's decision to withhold an SSN as a request for the Court to exercise mandamus jurisdiction.

Thomas states that he submitted sufficient documentation to the SSA but that SSA employees violated a "clear, nondiscretionary duty" owed to him. (Doc. 18 at 19–28.)  Thomas reasserts arguments about SSA's denial of his driver's license as a form of identification, which the Court has already addressed and will not revisit here.

Thomas also argues that the photocopy of his delayed birth certificate should be acceptable despite the fact that it is notarized by a Minnesota office rather than certified by the Maine Office of Vital Records (i.e., the original custodian of the birth certificate).  (Doc. 18 at 20-21.)  He further asserts that he should have been given a Form SSA-L706, Letter to Custodian of Birth Records to request a certified copy of a delayed birth certificate.

For mandamus jurisdiction to lie under 28 U.S.C. § 1361, Thomas must show (1) he has exhausted all available administrative remedies and (2) SSA violated a "clear, nondiscretionary duty" owed to him.  Heckler, 466 U.S. at 616.

As discussed, Thomas did not exhaust all available administrative remedies. This, alone, is enough to find that mandamus does not lie.

That being said, Thomas also did not demonstrate that SSA violated a clear, nondiscretionary duty owed to him. Thomas failed to submit supporting documents that complied with the requirements set out in 20 C.F.R. § 422.107(a). Proof of age, identity, and citizenship must be "convincing." 20 C.F.R. § 422.107(a); Abuhouran v. Soc. Sec. Admin., 291 F. App'x. 469, 473 (3rd Cir. 2008). Because his documents were noncompliant, SSA did not have a clear, nondiscretionary duty to issue an SSN. See, e.g., Jones v. Bowen, 692 F. Supp. 887, 891 n.3 (N.D. Ill. 1988) ("The [Commissioner] has no plainly defined duty to assign SSNs . . . without proof of an applicant's eligibility."). Thomas also failed to "submit evidence to assist [SSA] in determining the existence and identity of any previously assigned Social Security number(s)." 20 C.F.R. § 422.107(a).

Finally, although one of the POMS sections Thomas cites says that SSA employees will complete SSA-L706 form for SSN applicants, employees do not do this automatically and do not do so without assistance from the applicant. (Compl. Ex. C at 14-15.) The record does not indicate Thomas asked SSA to assist

him with the form.  More importantly, the issue is moot.  Thomas has requested

an official copy of his birth certificate from the state of Maine.  (Doc. 21-9 at 4.)

For all these reasons, mandamus jurisdiction does not lie in this case.

**C.     SSA's Motion to Dismiss for Failure to State a Due Process Claim under Federal Rule of Civil Procedure 12(b)(6)**

Thomas argues that SSA "permanently strip[p]ed" him of the ability to

reapply for an SSN.  (Doc. 18 at 28.)  Thomas states Phoenix told him to meet

with lawyers from the OIG before he can reapply or have a review of his

application all "to withhold any right owed to [him]."  (Id. at 12 (citing https://

drive.google.com/file/d/1BtwVNvKeiVljYGx2gtnlWVN8O2FTh9oO/view).)

He contends that Phoenix's statement that he communicate through Sen.

Klobuchar's office, suggestion that he contact the OIG to apply or request review,

and alteration of his documents to make it appear as though SSA did not realize

that Thomas did not have a previously-assigned SSN show that the denial of an

SSN violated his due process rights.[1]  (Id. at 29.)[2]

> Courts use the Mathews v. Eldridge test to determine what
> procedures are necessary to avoid a procedural due process

---

[1] Thomas's argument that SSA altered his documents is without merit.

[2] Thomas advanced due process arguments related to all issues in this case.  All due process arguments were the same or similar and all arguments are consolidated and addressed in this section.

violation.  That test balances: (1) the affected private interest of the
official action, (2) the risk of erroneous deprivation of that interest
through the existing procedures and the probable value of
additional procedural safeguards, and (3) the governmental interest,
which includes the fiscal and administrative burdens of additional
procedural safeguards.  The relevant inquiry is not what additional
procedures might be helpful but whether the existing procedures are
constitutionally defective because they present an unreasonable risk
of an erroneous deprivation of the private interest, in light of the
particular situation (the government's interest and the probable
value of additional safeguards).

Vondran, 2017 WL 1862645, at *4 (citations omitted and cleaned up).

Thomas has not stated a valid due process claim because SSA did not

permanently deprive Thomas of the right to apply for an SSN.  SSA's procedures

pass Mathews muster:

The risk of erroneous denial of an SSN application is low because
the SSA officers who review the applications have access to detailed
guidelines on how to evaluate various forms of evidence. . . .  Even if
an application were incorrectly denied, . . . the applicant would have
received a notice explaining the flaw in the application and what the
applicant can do to request a second review or to submit a new
application. . . .  [W]hen an applicant requests a second review, a
different SSA officer reviews the application and evidence anew to
make a determination. . . . There is no limit on the number of times
an applicant may reapply for an SSN.

Id. at *5 (citations omitted).

Thomas was afforded this due process but did not take advantage of it.

Instead, on or about September 13, 2022, Thomas contacted Rep. Omar's office;

16

three days later, Mr. Akolade Gbadamosi from that office told Thomas that he had reached out to SSA on Thomas's behalf.  (Doc. 21-2 at 2-6.)

Thomas misapprehends Phoenix's comments regarding the Office of Government Counsel ("OGC"), which Thomas calls "the Office of the Inspector General" ("OIG").  Phoenix said she was in touch with Akolade through Sen. Klobuchar's Office, which was an error because Gbadamosi works for Rep. Omar.  Phoenix then said that she reached out to OGC to "see when we can get attorneys in here to interview you," which is exactly what Gbadamosi told Thomas they could try as a way to help him obtain an SSN (Compl. Ex. B at 4 (October 11, 2022 email from Gbadamosi to Thomas); https://drive.google.com/file/d/1BtwVNvKeiVljYGx2gtnlWVN8O2FTh9oO/view at 2:30-2:45 (video showing Phoenix at SSA office) (last visited Sept. 1, 2023).)

Phoenix's action was likely in response to Gbadamosi contacting SSA in response to Thomas's complaint to Rep. Omar's office that he was denied an SSN.  (Doc. 21-2 at 4.)  Therefore, instead of Phoenix working to deny Thomas an SSN, she was working with Rep. Omar's Office to help Thomas secure an SSN via an alternate route, even after Thomas eschewed all guidance and direction from the SSA to secure an SSN via the usual channels.  And Thomas still has

those usual channels available to him to secure an SSN.  SSA explained why

Thomas's documents were deficient and what he must do to cure the defects.

Because the "SSN application process is based on verifiable documentary

evidence . . . [and] the documents speak for themselves," Thomas has not been

denied due process.  <u>Vondran</u>, 2017 WL 1862645, at *5.  If anything, Thomas

circumvented due process by contacting Rep. Omar's office and the "OIG"

(Compl. at 4) instead of exercising the options he was given.

## IV.    ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY**

**ORDERED:**

    1.    Defendant's Motion to Dismiss for Lack of Jurisdiction  **[Doc. 7]** is **GRANTED**;

    2.    Plaintiff's Motion to/for Opposition to Defendant's Motion to Dismiss **[Doc. 17]** is **DENIED**; and

    3.    The Complaint **[Doc. 1]** is **DISMISSED without prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   September 20, 2023          s/Michael J. Davis_____
                                    Michael J. Davis
                                    United States District Court